Okay, the next case this morning is number 161361, Intellectual Ventures versus Motorola Mobility, Mr. Babcock. Good morning, your honors. May it please the That's with respect to two claim limitations. The first is the LAN routing system limitation. The second is the standalone system limitation. While this is a swear behind case, this is not a substantial evidence case. The board committed legal error with respect to each of these limitations that requires reversal. I'm going to spend a little bit of time first on the LAN routing system limitation. I think that one's probably the clearest and the brief. Let me walk it through quickly. The argument is that the board construed that limitation as not requiring authentication, but then when terminating the swear behind question said that it was a limitation, right? That's almost perfect, your honor. Authentication or control. But I'm a little puzzled because didn't you, that is the patentee, argue for a limitation that required authentication? We, the patentee argued for a narrow claim construction which required authentication and control. The board rejected that limitation and said no. Suppose we were to say that you were right in the first place. Where would that leave us? Wouldn't you lose then? Well, no, your honor. We wouldn't lose because the problem then is that the prior art didn't teach it. That's why the board gave a broad construction which left out authentication and control for the sole purpose of reading the claim on the Mitchell, which didn't have those features. In order to find that the claim covered the prior art, the board gave a very broad construction. But then when it turned to look at our swear behind evidence, it said, ah, we're going to use a narrow construction that actually requires authentication and control. Your evidence doesn't show that. That's the legal error. So if the court were, in fact, to adopt the narrower construction, then the prior art is a problem because the prior art doesn't disclose those features. There's no question that Mitchell doesn't disclose authentication or control. So, at a minimum, there's got to be a consistent claim construction applied on both sides. The board can't argue a narrow construction for purposes of swear behind and then penalize the patentee by using a broad construction for purposes of reading the claims onto the prior art. And that's exactly what happened here. And that's error. Well, normally this would be a substantial evidence case. That's not what happened here. This particular limitation, the board was inconsistent in how it applied it. It construed it two different ways for purposes of achieving the result it wanted to achieve. Well, that's relevant only if you are in a position to swear behind. Is that correct? Yes, I believe that's correct, Your Honor. So the question before that question is, when did conception occur? Isn't that the question the fundamental question in this discussion? The fundamental question, Your Honor, is, was there adequate corroboration for that conception reduction practice evidence? Our position is October 22nd, 2008. Before you get to your position, tell me what our standard of review is with regard to the underlying facts of exactly what the inventor said and what corroboration he had. What's the standard of review for corroboration of the inventor's testimony? Your Honor, substantial evidence. If it's a matter of weighing the evidence and deciding substantial evidence with regard to conception or substantial evidence with regard to the standard of review. Conception reduction practice is going to be a legal test, but based on underlying factual considerations. Corroboration is a factual determination reviewed by substantial evidence. But that isn't our focus here, Your Honor. The focus here is on the rule of reason. The rule of reason requires that the board, the finder of fact, look at all contemporaneous evidence that's presented. And the reason we have a complaint here, Your Honor, and I think it's a legal issue, is the board categorically excluded a key piece of corroborating evidence because it was dated five weeks after the critical date. This is a situation where the board balanced the evidence and said, well... What do you mean by contemporaneous evidence? The rule of reason requires contemporaneous evidence. There is no... What's your definition of contemporaneous evidence? Is there something a year later contemporaneous? There is, Your Honor, we've thought about that question, and the answer is there is no hard and... There's no bright light. There's no hard and fast rule. The Ohio Willowood case... There must be, even if there's not a hard and fast rule, there has to be a precise number of days or weeks. There's still got to be outer boundaries to it. And whatever that number is, Your Honor, you don't have to decide that because in this case, there's no question that the evidence that was presented here was contemporaneous. We have a scenario where on November 22nd, 2002... It wasn't like the next day or the next week. What was it, eight weeks? Five weeks after the critical date. Five weeks after the critical date, seven weeks after the first successful test. Some of your corroborating evidence is based on stuff that you say you could establish on the record some years later. No, Your Honor. Let's... Okay, we can talk about the Microsoft documents. The most important evidence is Exhibit 2020, which is the five weeks... But some of it, the manual, the Windows 98 manual, was months later. The key issue here... Wait, wait, wait. Yes, it's dated years. Years after. But here's the key inquiry, Your Honor. Are you suggesting that years after is contemporaneous? What I'm suggesting is that piece of evidence is still relevant to show what Microsoft Windows intrinsically had. But to answer my question, is years later contemporaneous? In this context, yes, it's relevant for the rule of reason. It's relevant to be considered for the rule of reason. But what I... The important thing for this panel is... Is that because that document, let's say, corroborated the type of functionality that Windows 98 had? Exactly. That document is a Microsoft document, publicly available, and it shows what the Microsoft functionality had. So it's not... For one version of it, yes. For the version that was in place, there's no dispute that that was the version that was in place at this point in time. That was a 1999 implementation of Windows 98. This was 2002. The testimony is the vendors went out, bought a new computer in 2002 to develop the system. So that's not our primary evidence. Our primary evidence is looking at these pieces of... Because the manual doesn't show that they used that functionality. The manual shows they used Windows 98. But it doesn't show that they used that functionality. Your Honor, you're doing... Your analysis is the same as the board and the same as Motorola's. You're trying to say... That doesn't mean it's necessarily wrong. What... The key evidence here is the inventor's testimony. The inventor's testimony is unequivocal. Every element of the claim is satisfied on October 22nd, 2002. And what you're missing, for the record, is what we're debating, which is, is there corroboration for the inventor's testimony is not enough. You need to corroborate the inventor's testimony. And the question here is, what is the nature of that corroboration? And I'm still unclear as to what the standard of our review is over that corroborating evidence. Are we looking for facts? Are these factual issues? All we're asking this panel to do is to say the board had to, in the rule of reason analysis, at least consider Exhibit 2020, which is the user guide. Rule of reason analysis of what? Rule of reason for corroboration. The rule of reason is a very flexible test. And the test is simply to determine whether or not the inventor's testimony, in this case, wasn't even deposed. Unquestionably, everything was there. Whether the inventor's testimony is... More likely than not true. That's all that was required. More likely than not true. Good. All right. We're making progress. And all you need is to have some evidence, and not every limitation. Just some evidence, sufficient evidence, for the finder of fact to conclude that more than likely than not, he was telling the truth. Now, there's no evidence here at all that he wasn't telling the truth. They didn't depose him. The question is not whether there's negative evidence that he wasn't telling the truth. The question you have to establish is whether your inventor was telling the truth. I get it, Your Honor. And the point is, they took Exhibit 2020 and said, we're not even going to put it on the scale. Because it's dated post-critical date. That was a hard line they drew. They said it's dated after the critical date. It goes out of the analysis 100%. That's a legal error. They had to at least consider it. Well, they listened to the evidence, and then they found it non-persuasive. They did not, Your Honor. With all due respect, Your Honor, they did not look at Exhibit 2020 on the merits. They did not evaluate the contents of that exhibit. They said very clearly, that is dated after the critical date. Therefore, we agree with petitioners. It is entitled to zero weight for anything. For establishing what the inventor had done back then. Why isn't that a sensible position? Because Ohio Willowood, Your Honor, says very clearly, and I'll read the quote. The corroborating evidence quote does not become irrelevant to the credibility determination simply because a patentee questions whether it was created shortly after the critical date. Well, that's surely true. It doesn't become irrelevant just because it's questioned. Right? But you've got NTP also, which talks about this. And suggests that stuff after the critical date. In that case, Your Honor, they weighed it. They weighed it and determined that it was after the critical date, but they looked at it on its content and said, because there's issues here about contradictions, we're not going to say it's adequate corroboration. All we're asking for, Your Honor, and I think this is a very fair request, under the rule of reason, the board had to at least consider the evidence and evaluate whether or not it assisted. And it's a key piece of corroboration. And if they had written that opinion a little differently, if they had evaluated and said, no, it doesn't mean anything, you would be without a case? We would certainly have a different issue. We certainly would have had a different analysis before we decided to bring the appeal. But that's not, this isn't the job of, the job of the board is to write out their analysis. And their analysis isn't, it's not equivocal here, Your Honor. They said very clearly, we look at this piece of evidence, it's dated after the critical date, QED, it's out. We're not going to consider it for any purpose whatsoever. That bright line is inconsistent with the rule of reason. That bright line test, just like you were asking me about bright line tests, what's contemporaneous? I don't know, but it's certainly after the critical date is okay, as long as it's part of the same endeavor. In this case, you have a situation where there's a development, there's a reduction of practice, and then what happens? They keep working on it, and they come up with a user guide, and a troubleshooting guide. But part of your problem, if you look at page 17 of the board opinion, what the board is saying is, as noted by petitioner, this failure to show contemporaneous intent by the inventors to use these functions in the manner now asserted defeats conception. That doesn't seem to rest on the notion that Windows 98 didn't necessarily have the functionality. But they're saying there's no evidence to corroborate that the inventors used that functionality. This says, even if the version of Windows 98 used in the MHS 1 did have the functions as asserted, in other words, they're saying, even if you're right, even if the manual confirms that it has those functions, the board is saying, there's no evidence corroborating the use of those functions. That seems to me to be a problem. Wait, wait, even if you are correct that the board had to look at this manual, even if you are correct that Windows 98 had the functionality, they are still saying you lose because there's no corroboration of the use of that function. Because they didn't look at Exhibit 2020 at all. 2020 does provide that exact evidence. Exhibit 2020 does not provide evidence of what these inventors did. It can't. Exhibit 2020 does, Your Honor. That's the user manual, right? It's the troubleshooting guide for this system, created after it was developed, to show how to use the system and if there's problems. And it says very clearly, this assigns DHCP locally. That's what that document says created by the inventors. Five weeks after the fact, very reasonable, that after they develop the product, they get it working, they write up a user manual troubleshooting guide, they say, how is this going to work? But that may be an issue. But basically, it is correct that the question of whether the manual provides corroboration is kind of irrelevant to this aspect of the board's decision, right? No, Your Honor. That particular troubleshooting guide does corroborate that feature. The board... It kind of corroborates the existence of the feature, it doesn't corroborate the use of the feature. Yes, it does, Your Honor. It does, because it says that this is the system, this is how it works, and it uses the DHCP locally. That's exactly what that manual says, what that troubleshooting guide says. The reason the board concluded that there's no evidence of how it's being used is because they... By the inventor. By the inventors. This is the inventor's troubleshooting guide. No evidence of it being used by the inventor. Yes. Because they're the ones that are testing it to develop the troubleshooting guide. They're running the system through its paces, and they're determining where our problems are rising, and that's what the troubleshooting guide is for. It's for telling people how to fix problems if they arise. And the troubleshooting guide very clearly shows that the system was using this feature, this DHCP feature. The reason the board says there's no evidence of that is because they said it's post-critical date, we're not using it at all. Okay. Thank you, Mr. Babcock. We'll restore your three minutes of rebuttal. Thank you, Your Honor. Mr. Alemani. Good morning, Your Honors. May it please the Court. The board did consider all of IB's evidence of corroboration. Speak up, please. I'm sorry. The board did consider all of IB's evidence of corroboration, including Exhibit 2020, and they reached a factual conclusion that the evidence did not corroborate Mr. LeBlanc's testimony. And that factual conclusion is supported by substantial evidence. In relation to Exhibit 2020, which was... Well, the board didn't make it clear that they were applying a rule of reason, did they? The board did, in fact, state explicitly that they were applying the rule of reason. They went through each of the pieces of evidence... They said that they were applying the rule of reason... Counselor, where do they say that, in their opinion? It says it directly after, I believe it's page 20, of the final written decision. It's directly after the analysis of each of the prior art references. So if we go to... I'm looking at page 20 of their opinion. Where am I looking? Find it. I'm sorry, it's page 19 at the bottom, with the last full paragraph. Upon reviewing the record as a whole under the rule of reason, we determine the evidence does not establish the adventurous conceit of the invention. Okay. I stand corrected. And in regard to... We've got a problem about the claim construction, because the board does seem to have applied to arrive at a claim construction, which excluded authentication, and then when it addressed the issue of conception, it said that there was a requirement of authentication. So isn't it inconsistent? Don't we have to send it back to consider that? To have them resolve that inconsistency? It is not inconsistent. They did not apply it inconsistently. We would agree that it's improper, had the board applied a different construction to the corroboration evidence versus the prior, that would be error, but that's not what the board did. Okay, well, help me understand why that's the case. Of course. Didn't the board say in its claim construction that authentication's not required? They did, that's true, yes. Okay, so why isn't it inconsistent? Because then the board stepped through the arguments that Ivy made. Ivy never argued for an alternative claim construction. The board in the institution decision said that it was not construing that portion managing the data path of the land routing term. So at the institution point, we both knew, Ivy and Motorola knew, that they were putting forth a construction or not construing plain and ordinary meaning. So Ivy proposed in its response the construction that Mr. Babcock mentioned that it required control or authentication. And so the board had that argument that there was control or authentication shown by the documents. The other argument that Ivy mentioned... They rejected that in the claim construction. They did. That's true, but that's the only argument. Didn't they not apply that claim construction to the authentication evidence? I'm sorry, to the corroboration evidence? The corroboration evidence, yes. They applied that, they applied the construction, the plain and ordinary meaning, to the corroboration evidence. The only evidence, the only argument that Ivy provided, that the corroboration evidence supported was of authentication or control. The other argument they made was communication. And the board took those two arguments in turn. Where is this? This is at page 17 of the final written decision. So if we turn to page 17, it's the final paragraph on page 17. The paragraph that begins on the end of page 17. Patent owners' argument that Exhibit 2009 demonstrates the inventors intended the MHS-1 to communicate internet data between the local internet access point and the internet access point is insufficient to show conception of the invention as recited. Because the invention, the claim requires managing the data path between the internet access interface and the local area network. So merely communicating between those two would not be sufficient. Then they turned to the second argument that Ivy provided. And they say, furthermore, we disagree that Exhibit 2009, that the requirement document demonstrates that the hotspot would control. Which was what Ivy argued was managing the data path. So they took both of Ivy's arguments in turn. But at the bottom of the 17 and the top of 18, they say there's no mention of providing authentication or any other type of control. Which seems to be imposing a claim requirement which they earlier rejected. Why am I wrong about that? I hesitate to say you're wrong. But the argument's incorrect. The only argument that Ivy put forth is that when you look at that short section of the requirement document to which Mr. LeBlanc refers and on which Ivy relies, that that short section somehow evidenced that there was authentication or some sort of control. That's the only argument they put forth. I assume it was a strategic decision not to put forth an alternative argument under a broader construction. I'm not understanding what you're saying. I'm reading this language at the bottom of 17 and the top of 18. And they seem to be saying that Exhibit 2009 merely describes displaying a welcoming page. There's no mention of providing authentication or any other type of control. So they're saying that that doesn't provide corroboration, right? I agree. That is what they are saying. And they are responding to the only argument that was presented to them. That that document evidences, corroborates the inventor's testimony that there was authentication and control. That's the only argument Ivy presented. Is that statement inconsistent with their earlier interpretation? It is not inconsistent with their earlier interpretation because their earlier interpretation is their construction of the claim term. This section of the opinion, pages 17 and 18, they're addressing the only argument presented to them. It's not within the board's purview to go back and try to make up new arguments to support a position that the patent owner never took. In fact, under the recent Nuvasiv decision, that would be errored. They can't go back and find something in the record that would somehow support an argument that was never made. The argument that Ivy made to them was that the hotspot either communicates or it authenticates and controls. The board looked at the communicate argument and said that's not enough. They looked at the authentication and control and said that's not shown. The two arguments that you've made to us, neither one of them are corroborated by the evidence. It was not an incorrect or inconsistent application of the claim construction. You're saying because they argued that 2009 showed authentication that the board was responding to that argument. Is that what you're saying? I'm saying that they presented two arguments with relation to the requirements document and yes, they are responding to the second argument as well as the first. Where do we find that argument? The patentee's argument that 2009 shows authentication? That's throughout the briefing and throughout the procedure. I can't deal with that. Where? Show me a page. Show you a page? Show me where they make that argument. It's... Not on appeal, but I'm talking about before the board. In the joint appendix on pages 323 and 324 Ivey's argument and this is cited in the board's decision on page 14 Ivey's argument is thus the routing system communicates between the local network and the internet. So that's the communication argument. I'm sure I'll let you get there. Where's the other argument? So I'm on pages JA323 and 324 and I'm not exactly sure where on the page. I can find that if you like. Your basic point is that there were two different issues that were raised by this construction problem and they were properly construing the claim one way for one issue and the other way for the other issue. Is that really what it comes down to? I'm saying they are not doing that. That they construed it one way and then they walked through the arguments that the parties presented in relation to corroboration. How that construction would apply to different arguments. That's what you're saying. Yes, exactly. How that same construction would apply to different arguments. Two different arguments. At the bottom of page JA323 it's the last sentence that starts there. This demonstrates that the inventors intended that the MHS-1 would communicate internet data between the internet card interface and the access point. In addition to this functionality of communicating and I'm going to skip forward Exhibit 2009 also references the fact that the MHS-1 would control clients devices access to the internet. So the two arguments that they presented below to the board were communicate and control. As discussed with regard to the embodiment of the 771 patented welcome page is used to provide authentication. And the board is saying it doesn't provide authentication. That's correct. It does not. The document the requirement document is dated in September 2002. And a patent application wasn't filed until March. And then these claims weren't amended in March of 2003 these claims weren't amended to include that language which doesn't appear anywhere else but in the claims until 2007. I understand what you're saying and there seems to be some merit to the notion that they argued that the welcome page provided authentication and that the board rejected that argument. But still I'm troubled by the lack of consistency in the claim interpretation. The patentee originally suggested that authentication was required so it seems to be arguing with respect to exhibit 2009 consistent with the claim construction that was proposed that there had to be authentication and that you found it in the welcome page. But shouldn't the board have said well you know under our claim construction authentication is no longer a requirement when it was dealing with that argument and didn't say that. That seems to me to be the problem. So the question you posed has a number of layers one is that whether or not the welcome page presents authentication and there was no evidence that merely displaying a welcome page provides authentication so there's no proof in the record that authentication is actually provided at that point. I think what you were citing before shows that the welcome page does not come up unless there's authentication No, the welcome page is displayed regardless. If you turn to exhibit 2009 in the record Mr. LeBlanc in his declaration which is exhibit 2006 points to one very short section in exhibit 2009 and then to a sentence in exhibit 2009 the section is on JA1355 it says the user turns on his or her laptop or PDA selects to connect to the mobile hotspot and then associates with the local hotspot and then starts browsing. So that was known, that's the connection part of connecting with the Wi-Fi network. Go back to JA0324 that same paragraph that you took us through it says as discussed with regard to the embodiment of 771 the welcome page is used to provide authentication. That was the patentee's argument that's not shown by the evidence your honor. Before your time runs out counsel, if I may I want to go back for a minute I didn't interrupt you did you? I want to go back to Mr. Babcock's argument that he refreshed our recollection that the board did say it was using the rule of reason but he says they didn't they said they were doing it but he says they really didn't do it because they simply refused to look at in any significant way certain evidence that was allegedly corroborating the inventor's testimony that the piece of prior the invalidating prior art appeared, right? He did argue that, yes. And what is your response to his argument? My response is that the board did consider that evidence and I'll point out exhibit 2020 is the user's guide. It's what they gave to users. It's mainly pictures. It's not a very technical document. It's mainly pictures used for the users. It's only used, there are two key claim limitations here. As Mr. Babcock pointed out, it's the LAN routing limitation managing the data path and the stand-alone limitation. They only rely on exhibit 2020 for the stand-alone limitation, the assignment or the stand-alone limitation. They don't rely on it for the other limitation which is managing the data path. The board did look at that evidence. Mr. LeBlanc only refers to that evidence briefly in his declaration. He says in December 13 we had a user's guide that we would give to our users when they were trying to use the device. Dr. Tufek never gives any testimony on it. Neither in direct nor on cross nor in redirect. So there's no testimony there. The only testimony that he has about the document, explaining the document is from our expert, Dr. Roy. As the board steps through each of the pieces of evidence, they talk about all the patent owners' arguments. They talk about the evidence the patent owner cites. Then they make a decision about the document and whether or not it is relevant. Obviously what they did in the paragraph for Exhibit 2020, for the troubleshooting guide, they look at Dr. Roy's testimony. Again, that's the only testimony relevant to Exhibit 2020. Then they look at the date and they conclude, based on that, that that post-bum evidence, that evidence from December of 2002 does not corroborate his testimony that he conceded of or reduced the dimension to practice before the November 4th bum date. Now as I read his brief and understand, I think I understand a part of that argument, which is that the board was wrong in looking at individual pieces of corroborating evidence as it applied to each of the elements of the inventor's invention, that you're not supposed to do that. You shouldn't take the inventor's claim, you should look at it as a whole and look at the corroborating evidence as a whole and say, on the whole, it adds up or it doesn't add up. They didn't quite do that. They took it piece by piece. And he thinks that's wrong. What's your response to that? I disagree. I think they took a very reasoned approach to evaluating the evidence. The rule is not that the inventor does not, I'm sorry, the rule is that the inventor has to show each limitation as claimed. What the inventor is not required to do is he's not required to corroborate verbatim what's listed in the claim. He's also not required to corroborate every specific fact that he testifies to. But he is, in fact, required to corroborate that he conceived of the entire invention as claimed. Each of the limitations in his claim. Each of the limitations. So what the board did is they focused on the two key claim limitations. And that's what the courts do throughout the cases that are cited in I.V.'s briefs and ours. They look at those key claim limitations. So for Ohio Willowood, it's whether the gel goes through the prosthesis liner. For TransWeb, it's whether or not Mr. Ogale gave out plasma infused material at the expo. There are specific things that the board is looking for to support those key claim limitations that whoever the witness is testified about actually happened. And so in this case, Mr. LeBlanc in his declaration says, I conceived of this invention, and Exhibit 2009, this requirement document proves that I conceived of the invention. And he points to specific areas of that. So the board looks at those specific portions of that document and comes to the conclusion that they don't corroborate his testimony that he conceived of it. They do the same with the other pieces of evidence and the structure for each of those pieces of evidence is precisely the same. We're not judging the form of what they did. We're trying to judge that they actually followed the rule of reason, that there's substantial evidence to support their conclusion that that testimony was not corroborated. And in this case, it certainly does. It seems to me that what we're looking at is whether the board applied something more restrictive than the rule of reason. And here, a problem that I have is that the inventor's testimony was unrebutted. You didn't depose the inventor, did you? We did not, but that does not mean that we didn't rebut his testimony. No, but you rebutted it with the same type of innocence. So we start off with the rule of reason with unrebutted testimony of the inventor. And I find that to be it's going to be harder for you to rebut. And I think it's easier to corroborate that type of unrebutted testimony. How do you see the failure to have deposed the penalty within the scope of rule of reason? Is there any change there? I don't believe that it's a failure. The basic rule is that the inventor's testimony must be corroborated, that it's not credible. In this case, where the inventor testifies... But we start the analysis here, it's unrebutted testimony. You did not depose them. But I don't believe that that leads to a conclusion it's unrebutted. We challenge the substance of the testimony on its face. That's always the assumption when we're dealing with corroboration, is that you have testimony from the inventor which is favorable to him. And the question is, okay, in addition to that testimony, it has to be corroborated. Right? The testimony must be corroborated because it's presumed to not be credible. And so we... You don't dispense with the requirement of that the inventor testified a particular way and that his testimony was not questioned as testimony, right? His testimony was questioned. He may... It's always the case that you start off in addressing the corroboration evidence with testimony by the inventor that says, you know, I conceived of it on a particular day. That's true, Your Honor. You always start off with testimony that says that. That's correct. And then there has to be corroboration of the statements that the inventor makes. This is... You said that we start off with the testimony, with the view that the testimony of the inventor is not credible. Is that your argument? I believe that's correct under the case law, yes, Your Honor. I don't think that's quite right. I mean, I don't think you start out with the notion that his testimony is not credible. You start out with the notion that people are self-interested and that we're not going to accept the testimony unless it's corroborated. It's not that he's not credible. It's that it's not standing alone enough. It's not persuasive without corroboration, I think is the idea. I agree with that, and I'm not saying... I didn't say in the record below, I'm not saying now that I think Mr. LeBlanc is lying. I think the problem that the rule recognizes is that when an inventor gives testimony, it can be self-interested. Not only that, but he's testifying over a decade later, and so that testimony becomes questionable on its face and must be corroborated. So, we're not trying to make the point he's lying. There's no broad discovery in these PTAB proceedings. There's really no way for us to know one way or the other. All we can do is look at his testimony, which again, it's a little different than a district court proceeding where we'd have Mr. LeBlanc sitting there giving testimony. It's all on the papers. And so we take that testimony, we look at the corroborating evidence, we look at it on the papers, and then we make a decision, did Ivey meet its burden to corroborate Mr. LeBlanc's testimony? Is his testimony accurate? Is it corroborated? In this case, there wasn't enough testimony to meet their burden. It didn't show what they needed to show, and it wasn't corroborated. And so the fact that we didn't depose him, there's no requirement that we have to depose witnesses, and often in these PTAB proceedings, witnesses aren't deposed. Even expert witnesses. Because their direct testimony is already on the paper. And they're not going to testify again unless called. I'm well over my time. Thank you, Mr. Alamani. You charge extra for overtime. I hope you understand. And just to be clear, Mr. LeBlanc's testimony did have every element. It was complete and accurate. So I understand. That's not enough. It's not enough. It's not enough. I want to go back to the discussion we had, Your Honor. I got a little excited. You want to go back to what? The discussion that we had about this statement in the board's decision that you were focusing on. I think we have to look at what the board did. They went first to 2009. 2009 is a pre-critical date document. And they looked at 2009 and said there is insufficient evidence the inventors intended to use the functionality to avoid the need for external server. That's what Your Honor pointed to. That's at JA 18. So they're going through all of the evidence. They're going through the evidence to say 2009 isn't enough. I get you. But the reason I was pushing back, Your Honor, is because then we go to the more critical evidence which is 2020. This statement has nothing to do with exhibit 2020. It's about does 2009 provide that evidence? The answer is no. 2020 says did your computer receive an IP address from the mobile hotspot? That's not the manual. It's a different argument. It's fine. It's a different argument. The manual was used to show the capability of the Windows 98. What I pointed to you is that the board said that doesn't show that they used it. Now you're saying okay I'm turning to this other issue as to whether they used it and I'm saying that exhibit 2020 shows that they used it. Correct. That's correct. It was assistance requirements guide and the board said that document doesn't show that they used it. Then they turn to this document which does show they used it. Here's what they said. This is the bottom of JA 18. They said that we presented that this document, this page shows that the DHCP server itself was not a relay agent but actually assigned the DHCP. That's what it says. Did you receive an IP address from the mobile hotspot? Here it shows how it does it. Mr. Alemani says the board considered this evidence, weighed it and concluded it didn't show it. Here's what the board says. They say patent owner's own evidence however shows that exhibit 2020 was created after November 4, 2002. We thus agree with petitioner that exhibit 2020 does not corroborate any pre-bomb conception or reduction of practice of any feature recited in the claim. That's not looking at this and saying well we don't think it says. They're saying it's dated, pre-critical, post-critical date and thus it doesn't provide any evidence for anything. Mr. Babcock, let's assume for discussion purposes that you're right. That statement is an erroneous statement by the board. Let's assume that. Okay. The issue however, as you have made clear to us is that the question is whether the totality of the evidence under the rule of reason supports the board's conclusion. The board came to the conclusion that your inventor's testimony was not adequately corroborated by all of the evidence you brought in. Is that correct? Is that a correct statement? That's correct, your honor. I agree with that. Except they didn't consider this. That in the course of looking at all that evidence, they made a wrong call as to one piece of it. What do we do at that point? Because this is the piece they said was missing is the one they overlooked. They said you're missing this one piece. DHCP assignment. Your evidence doesn't show that. And the one piece that does, we're not going to look at it at all because it's post-critical date. That's an error. They didn't exactly say that. I think they did, your honor. It says it's dated post-critical date. We thus agree. It doesn't show anything. There's no other mention of Exhibit 2020 in this opinion. There's no discussion of this exhibit at all. The only discussion is that it's post-critical date. Therefore, it gets completely disregarded. That's legal error. The board was required, under the rule of reason, to throw it into the mix. Evaluated. I got that. Thank you, Mr. Rafferty. Thank you, your honor.